## BROOKS *vs.* POLLARD.

[ACTION BY PURCHASER, AGAINST BROKER, TO RECOVER PRICE OF SLAVE SOLD WITHOUT LICENSE.]

1. *Construction of statutes prohibiting sale of slave by broker or agent without license.*—Neither the 17th sub-division of section 397 of the Code, nor the act of 1856 amendatory thereof, (Session Acts 1855–6, p. 25,) prohibits a broker or agent for the sale of slaves from selling a slave belonging to himself, without license.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by Thomas F. Pollard, against Augustus Brooks, to recover the sum of $800, paid by plaintiff to defendant, on the 12th October, 1857, as the price of a slave. The complaint alleged, that the defendant was a negro-trader, broker, or agent for the sale of slaves, and sold the slave without having a license, as required by the 17th sub-division of section 397 of the Code; and that the action to recover back the purchase-money was brought under section 400. The defendant pleaded the general issue, in short by consent, and several special pleas; averring that the slave sold by him was his own property, and that the sale was not made by him as a negro-trader, broker, or agent for the sale of slaves. Issue was joined on the first plea, and demurrers were sustained to the several special pleas. The court charged the jury, in substance, that if they believed the defendant was engaged in the business of a negro-trader, broker, or agent for the sale of slaves, and sold the slave at his place of business, without having procured a license as required

by section 397 of the Code, then they must find for the plaintiff, although they might also believe from the evidence that the slave belonged to the defendant, and was not bought by him for the purpose of speculation. This charge, to which the defendant reserved an exception, is now assigned as error, together with the adverse rulings of the court on the pleadings and evidence.

WM. BOYLES, for appellant.

R. B. ARMISTEAD, contra.

R. W. WALKER, J.—Section 397 (sub-division 17) of the Code provides, that on the payment of a special tax, license is to be granted "to sell, offer, or expose for sale any slave, by a negro-trader, broker, or agent for the sale of slaves." By section 399 it is provided, that if any person, "being a negro-trader, broker, or agent for the sale of slaves," sells, or offers to sell a slave, without first obtaining a license, he must, on conviction, be fined not less than the amount of the State tax for the license. Section 400 provides, that in addition to this penalty, "the sale of a slave by a negro-trader, broker, or agent for the sale of slaves, is void as to the seller, and the purchase-money may be recovered back, by action commenced within one year from the payment thereof."

In Brooks v. The State, (30 Ala. 516,) this court, in construing section 397, said: "Traffic in slaves, as a business or employment, was the subject under consideration; and we think the language relates to nothing else. * * * * * The intention was to derive revenue from the *business*—the *traffic*—in slaves by *negro-traders, brokers* (for the sale of slaves), and all other *agents* for the sale of slaves. It is only those brokers and agents who are, as such, engaged in the sale of slaves as a business, who are provided for in the section of the Code we are considering."

If we look alone to the provisions of the Code, it is obvious that the only sales by brokers or agents, which they were designed to embrace, are such as are made by them in the capacity of broker or agent. As a person

can not act in the capacity of broker or agent in selling his own property, it follows that the Code does not require that one who is not a negro-trader, but is simply a broker, or agent for the sale of slaves, must obtain a license, before he can legally sell one of his own slaves.

It is insisted, however, that the amendatory act, approved Feb. 7, 1856, (Acts '55–6,) rendered it illegal for a broker or agent for the sale of slaves to sell a slave belonging to himself, without license. The first section of this act so amends sub-division 17 of section 397 of the Code, as to exempt from license or tax the sale or offer for sale of of slaves, by auctioneers, brokers, or agents for the sale slaves, provided that affidavit is made that the slave so sold or offered for sale is the property of a resident of this State, and that such resident has owned said slave for more than one year preceding the offer for sale within this State. The second section provides, that *"this act shall be so construed as to apply only to such slaves as may be sold by any trader, broker, auctioneer, or agent, on commission, for citizens of the State, and which slaves have been owned in the State for more than one year preceding the sale ; and shall in no case apply to any slave owned by any trader, broker, auctioneer, or other person selling slaves on speculation, or as a business; and the affidavit required in the preceding section shall set forth these facts."*

The whole difficulty grows out of the clumsy phraseology of the second section. But looking at the entire act, we think its only purpose was to narrow—not to extend the operation of section 397 of the Code. It adds no new penalties, nor does it create a new offense. It simply exempts from the influence of the Code a class of sales which had been previously governed by its provisions, and which the legislature considered should not be burthened with taxation, or subject to the heavy penalties provided for by sections 399–400.

The first section, as already stated, relieves from the operation of section 397 of the Code certain sales of slaves by auctioneers, brokers, or agents for the sale of slaves. But that section, standing by itself, would, perhaps, have

been open to misconstruction and evasion, by reason of the vagueness of the term "residents of this State," and also because it does not expressly require that there should be an ownership of the slave *in this State* for twelve months preceding the sale. To obviate these defects, and remove all uncertainties arising out of the language of the first section, the second section was added, which does not profess to do more than to define with greater precision the sales to which "*this act*" shall be construed to apply. In other words, the first section was intended to withdraw from the operation of section 397 of the Code a certain description of sales, but it failed to define with the requisite clearness the particular class of sales which was meant to be thus exempted from license and tax; the second section was added to complete this imperfect definition, and is to be construed as simply explanatory of the first, and not as introductive of a new offense, or of new subjects of license and tax, not provided for by the Code. The language of the entire act shows, that it was intended to restrict the operation of section 397 of the Code, by dispensing with some of the licenses therein required, and precludes the idea of a design to extend the requirement for a license, to sales not embraced by the provisions of the Code. It follows, that the sale by a broker or agent, of a slave belonging to himself, is unaffected by the act of 1856; and its legality must depend upon the previous law, as found in the Code.—See Brooks v. State, 30 Ala. 516–7.

There is, as we have seen, nothing in the Code, which deprives a broker or agent for the sale of slaves (not being a negro-trader) of the right to sell, at private sale, and without special license therefor, a slave belonging to himself. Such a sale is not a sale by a broker or agent for the sale of slaves, within the meaning of the Code, and is not subject to the penalties imposed by sections 399 and 400.

The rulings of the city court were in conflict with the opinion here expressed; and, as this view of the main question involved will probably be decisive of the case on

another trial, we will not consider any of the other questions presented by the record.

Judgment reversed, and cause remanded.